IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DANIELLE JACKSON,

               Plaintiff,

       v.

BP EXPLORATION &
PRODUCTION INC., ET AL.,

             Defendants.

Civil Action No. 25-552-CFC

---

Patrick C. Gallagher, JACOBS & CRUMPLAR, P.A., New Castle, Delaware;
C. David Durkee and Sheeba Ajwani, THE DOWNS LAW GROUP, P.A., Coconut
Grove, Florida

       *Counsel for Plaintiff*

Paul A. Bradley and Antoinette D. Hubbard, MARON MARVEL BRADLEY
ANDERSON & TARDY LLC, Wilmington, Delaware; Peter Bradford deLeeuw,
DELEEUW LAW LLC, Wilmington, Delaware; Jason D. Angelo, REED SMITH
LLP, Wilmington, Delaware; A. Katrine Jakola and Kristopher S. Ritter,
KIRKLAND & ELLIS LLP, Chicago, Illinois; Kerry J. Miller and Paul C.
Thibodeaux, FISHMAN HAYGOOD LLP, New Orleans, Louisiana; R. Alan York,
REED SMITH LLP, Houston, Texas

       *Counsel for Defendants*

**<u>MEMORANDUM OPINION</u>**

August 13, 2025
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

Plaintiff Danielle Jackson sued Defendants BP Exploration & Production Inc., BP America Production Company, Transocean Holdings, LLC, Transocean Deepwater, Inc., Transocean Offshore Deepwater Drilling Inc., and Halliburton Energy Services, Inc. for negligence and gross negligence.  D.I. 1.  Pending before me is Defendants' motion to transfer the case to the Northern District of Florida pursuant to 28 U.S.C. § 1404(a).  D.I. 39.

## I.    BACKGROUND

On April 20, 2010, workers on the *Deepwater Horizon* oil rig lost control of the Macondo Well, causing an explosion that led the *Deepwater Horizon* to catch fire.  D.I. 1 ¶ 30.  As a result of the explosion and fire, millions of gallons of oil discharged into the Gulf of Mexico over the next 87 days.  D.I. 1 ¶ 35.

The incident led to an extraordinary volume of litigation.  In response, the Judicial Panel on Multidistrict Litigation (JPML) assigned Judge Carl Barbier of the Eastern District of Louisiana to oversee the ensuing multidistrict litigation (MDL): MDL 2179.  *See* D.I. 13 at 1.  Judge Barbier organized categories of cases and ordered that personal-injury claims be placed in the "B3 bundle."  *See* D.I. 13 at 1.

On November 27, 2024, Plaintiff filed this suit, alleging in her complaint personal injury due to exposure to toxic chemicals from the *Deepwater Horizon* oil spill. D.I. 1 ¶ 1. Defendants—Delaware corporations with their principal places of business in Houston, Texas—were involved with drilling and production-related operations on the *Deepwater Horizon*. D.I. 1 ¶¶ 3–11. Plaintiff is a citizen and resident of Santa Rosa County, Florida. D.I. 1 ¶ 2. Plaintiff alleges that she "was exposed to oil, DW Toxic Chemicals and Toxic Dispersants in and around Florida," specifically "in and around Pensacola, FL, Fort Walton Beach, FL, Panama City Beach, FL, Fort Pickens, Navarre Beach, and Milton, FL." D.I. 1 ¶ 79. Plaintiff particularly alleges exposure at her work and recreational activities in areas of Florida affected by the oil spill as well as ingestion of contaminated seafood from the Gulf of Mexico. D.I. 1 ¶ 80.

On December 11, 2024, the JPML conditionally transferred this case to the Eastern District of Louisiana, where the case was consolidated with MDL 2179. D.I. 6; D.I. 14 at 3. Upon the MDL court's completion of the claim substantiation process, the court suggested to the JPML that the case be remanded to the District of Delaware. D.I. 14 at 14–15. On May 6, 2025, the case was remanded to this Court. D.I. 14; D.I. 15 at 126.

## II.    DISCUSSION

### A.    Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Defendants contend, and Plaintiff does not dispute, that this action could have been brought in the Northern District of Florida. *See* D.I. 40 at 9; *see generally* D.I. 42. Thus, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer this case to the Northern District of Florida.

Defendants have the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy. *See id.* "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis added) (internal quotation marks and citation omitted).

Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the Third Circuit identified in *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995), twelve interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

3

> [1] plaintiff's forum preference as manifested in the
> original choice; [2] the defendant's preference;
> [3] whether the claim arose elsewhere; [4] the
> convenience of the parties as indicated by their relative
> physical and financial condition; [5] the convenience of
> the witnesses—but only to the extent that the witnesses
> may actually be unavailable for trial in one of the fora; and
> [6] the location of books and records (similarly limited to
> the extent that the files could not be produced in the
> alternative forum).

*Id.* (internal citations omitted).  The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical
> considerations that could make the trial easy, expeditious,
> or inexpensive; [9] the relative administrative difficulty in
> the two fora resulting from court congestion; [10] the local
> interest in deciding local controversies at home; [11] the
> public policies of the fora; and [12] the familiarity of the
> trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (internal citations omitted).  As the parties have not identified

relevant factors beyond these twelve interests, I will balance the *Jumara* factors in

deciding whether to exercise the discretion afforded me by § 1404(a).

## B.    Analysis of the *Jumara* Factors

### 1.    Plaintiff's Forum Preference

This factor is of paramount importance and therefore weighs strongly

against transfer.  *VLSI Tech. LLC v. Intel Corp.*, 2018 WL 5342650, at *2 (D. Del.

Oct. 29, 2018).

### 2.    Defendant's Forum Preference

This factor favors transfer.

4

### 3.    Whether the Claim Arose Elsewhere

This factor favors transfer.  Plaintiff's claim primarily arose from exposure

to toxic chemicals and dispersants in Florida.  *See* D.I. 1 ¶ 79.  "[I]f there are

significant connections between a particular venue and the events that gave rise to

a suit, this factor should be weighed in that venue's favor."  *Intell. Ventures I LLC*

*v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 481 (D. Del. 2011)

(quoting *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

Plaintiff argues that "[t]his factor carries little weight" because "her action

'arose' on the outer-continental shelf in the territorial waters of the United States"

and is thus "governed by general maritime law."  D.I. 42 at 7.  Plaintiff appears to

conflate choice of law and jurisdiction with venue.  *See* 28 U.S.C. § 1390 (defining

"venue" as "the geographic specification of the proper court or courts for the

litigation of a civil action" that "does not refer to any grant . . . of subject-matter

jurisdiction").  Even if the original oil spill occurred in territorial waters, Plaintiff

nevertheless concedes that she "was exposed to oil, DW Toxic Chemicals and

Toxic Dispersants in and around [areas in the Northern District of] Florida."  D.I. 1

¶ 79.  This factor therefore favors transfer.

### 4.    The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor favors transfer slightly.  Courts determine the convenience of the

parties by considering: "(1) the parties' physical location; (2) the associated

logistical and operational costs to the parties in traveling to Delaware—as opposed to the proposed transferee district—for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Tumbaga v. Equifax Info. Servs., LLC*, 2020 WL 4673907, at *3 (D. Del. Aug. 12, 2020). On the one hand, no party has a physical presence in Delaware, and the Northern District of Florida is geographically closer to both parties. *See* D.I. 1 ¶¶ 3, 8, 10 (stating that Defendants are Delaware corporations or entities with their principal places of business in Houston, Texas); D.I. 43-1 ¶ 2 (declaring that Plaintiff currently resides in Milton, Florida). Plaintiff maintains that she is "fully willing and able to travel to Delaware as necessary to litigate [her] claims." D.I. 43-1 ¶ 4. But Plaintiff is also an individual who alleges that she has lost work and "suffered physical handicap." D.I. 1 ¶ 156. Traveling to Delaware for litigation purposes may therefore impose greater logistical and operational costs. And, notably, Plaintiff describes Delaware as an "appropriate and fair forum," not a convenient one. D.I. 43-1 ¶ 5.

On the other hand, Defendants are large, multinational corporations that chose to incorporate in Delaware. D.I. 1 ¶¶ 3, 8, 10; *see also ZapFraud, Inc. v. Barracuda Networks, Inc.*, 2020 WL 4335945, at *5 (D. Del. July 28, 2020) ("[I]t is hard for [the defendant] to argue that this district is a decidedly inconvenient forum, since it is incorporated here."). "[A]bsent some showing of a unique or

6

unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001). To establish "inconvenien[ce]," therefore, Defendants must show that they would face "a unique or unexpected burden" in having to litigate this case in this District. *Id.* Defendants have not identified any significant inconvenience—let alone a unique or unusual burden—that they would encounter as parties in this Court.

On balance, this factor favors transfer, but only slightly.

### 5. The Convenience of Witnesses to the Extent They May Actually be Unavailable for Trial in One of the Fora

This factor is neutral, as there are no allegations that any witnesses would be unavailable for trial in either forum. *See Jumara*, 55 F.3d at 879 (listing the convenience of the witnesses as a private interest factor "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"); *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that the "[convenience of witnesses] factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena").

### 6. The Location of Books and Records

The parties do not dispute that this factor is neutral. *See* D.I. 40 at 14; D.I. 42 at 11.

### 7.   The Enforceability of the Judgment

The parties do not dispute that this factor is neutral. *See* D.I. 40 at 14; D.I. 42 at 11.

### 8.   Practical Considerations

This factor favors transfer. *Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. It is undisputed that Plaintiff's counsel has pursued many B3 actions in the Northern District of Florida, and these actions have been governed by a single district-wide B3 case management order. *See* D.I. 40 at 14; *see generally* D.I. 42. It stands to reason that the judges in the Northern District of Florida have therefore gained familiarity with the laws and facts applicable to B3 cases. Even if Plaintiff's claim "will require an individualized inquiry into her medical history, alternative exposures, and familial predispositions," D.I. 42 at 12, this familiarity is still valuable. *See In re Deepwater Horizon BELO Cases*, 2024 WL 3159298, at *2 (N.D. Fla. June 25, 2024) ("The Court is well-versed in issues related to general causation in cases stemming from the *Deepwater Horizon* oil spill."). In contrast, it is undisputed that Plaintiff's action would represent the first B3 claim in Delaware in the fifteen-year history of the *Deepwater Horizon* litigation. *See* D.I. 40 at 15; *see generally* D.I. 42. Because "[a]djudicating almost

identical issues in separate fora would waste judicial resources," this factor favors transfer. *In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006).

Although I did not consider issues of economic cost and logistical convenience with respect to potentially relevant witnesses when I assessed factors four and five, it is appropriate to consider these issues in assessing "practical considerations." *See Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, 2013 WL 4496644, at *7 (D. Del. Aug. 21, 2013); *Mitel Networks Corp. v. Facebook*, 943 F. Supp. 2d 463, 475–76 (D. Del. 2013). Because "causation is a critical element" in B3 cases, D.I. 13 at 4, Plaintiff's doctors may be relevant witnesses. Plaintiff argues that her diagnosing doctor, Dr. Pedro de la Rosa-Costa, practices in South Florida, not the Northern District of Florida. D.I. 42 at 4; *see* D.I. 43-2 at 2 (listing an office in South Miami as Dr. de la Rosa-Costa's primary practice address). But all of Plaintiff's doctors—including Dr. de la Rosa-Costa— have practice locations in Pensacola, Florida. *See* D.I. 41-4 at 8–10. The location of these medical witnesses thus favors transfer.

Plaintiff also argues that Delaware is a more convenient venue for Plaintiff's retained experts, all of whom live in the Northeast. D.I. 42 at 15; *see also* D.I. 43-3 ¶ 3 (stating that Plaintiff's experts are located in Providence, Rhode Island; Skillman, New Jersey; and Cambridge, Massachusetts). The location of expert witnesses, however, "carr[ies] little weight in determining where the balance of

9

convenience lies." *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012) (internal quotation omitted) (quoting *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998)).  On balance, this factor favors transfer.

### 9.    Relative Administrative Difficulty Due to Court Congestion

This factor favors transfer.  To analyze the relative levels of court congestion between the two districts, I take judicial notice of the most recent Federal Court Management Statistics published by the United States Courts.  *See U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (December 31, 2024)*, ADMIN. OFF. OF THE U.S. CTS., https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distprofile1231.2024.pdf [https://perma.cc/EXY6-PD2B].  These statistics cover the 12-month period ending on December 31, 2024.

According to these statistics, the weighted case filings per active judgeship in this District is 612.  In the Northern District of Florida, the weighted case filings per active judgeship is 476.  The median time from filing to trial in this District (32.3 months) is almost two times longer than in the Northern District of Florida (17.7 months).  Plaintiff points to the 168,829 total civil cases in the Northern District of Florida as compared to the 1,309 total civil cases in this District, D.I. 43-6 at 2–5, arguing that weighted filings per judgeship is "not always a

10

reliable metric for court congestion," D.I. 42 at 16. But Plaintiff does not cite any legal authority suggesting why I should consider total number of civil cases rather than weighted filings per judgeship. Plaintiff also fails to acknowledge how weighted filings "account for the different amounts of time district [court] judges require to resolve various types of civil and criminal actions." *Explanation of Selected Terms*, ADMIN. OFF. OF THE U.S. CTS., https://www.uscourts.gov/sites/default/files/document/explanation-of-selected-terms-march-2025.pdf [https://perma.cc/HYG4-JCMC]. Cases that require substantially more judicial resources than the average civil case because of their complexity and scope receive a higher weight. *Id.* And although Plaintiff correctly notes that the median time between filing and disposition of a civil case in this District (9 months) is shorter than in the Northern District of Florida (46.1 months), D.I. 43-6 at 2–5, the reality is that this Court's docket is much more congested than the Northern District of Florida's. Thus, this factor favors transfer.

### 10. Local Interest in Deciding Local Controversies at Home

This factor favors transfer. Plaintiff's complaint alleges that, as a resident of the Northern District of Florida, she was exposed to harmful toxins within that district's borders. D.I. 1 ¶¶ 79–80. Florida thus has a substantial interest in deciding the merits of those claims and ensuring their consistent adjudication. Delaware, on the other hand, has no connection to the events giving rise to this

action. Plaintiff identifies only one connection between Delaware and Deepwater Horizon—an irrevocable trust that BP established in 2010 to settle claims from the oil spill. D.I. 42 at 18. Plaintiff relies on Delaware state court cases involving *forum non conveniens* to argue that "Delaware has an 'interest in adjudicating disputes involving Delaware entities.'" D.I. 42 at 19 (internal citation omitted). Given the nature of this case, however, the Northern District of Florida has a greater local interest in resolving this dispute than Delaware.

Plaintiff also argues that because this case involves a violation of federal law, this action "does not present a local controversy in any jurisdiction." D.I. 42 at 19. To support this assertion, Plaintiff relies on two cases that involve national, not local, controversies. *See* D.I. 42 at 19; *see also Shively v. PetSmart, Inc.*, 983 F. Supp. 2d 474, 478 (D. Del. 2013) ("[T]he instant action does not represent a local controversy, since it involves violation of a federal law, brought against a multinational corporation, concerning policies that are enforced on a company-wide basis.") (internal quotation and citation omitted); *Cox ex rel. ING Glob. Real Est. Fund v. ING Invs. LLC*, 47 F. Supp. 3d 209, 213 (D. Del. 2014) (holding that "securities litigation does not constitute a local controversy in most cases" because "securities litigation is governed by federal law and affects national markets" as well as "shareholders nationwide"). Here, however, the oil spill affected "the delicate wetlands and intertidal zones that protect the coasts of Louisiana,

12

Mississippi, Alabama, Texas, and Florida." D.I. 1 ¶ 42. Toxic exposure from the oil spill is therefore a local controversy in which Florida has a strong interest. Thus, this factor favors transfer.

### 11. Public Policies of the Fora

This factor favors transfer. Defendants argue that Plaintiff's allegations of exposure to harmful toxins at various locations within Florida implicate Florida's environmental and public health policies, as well as its public policy interest in having this matter adjudicated in its courts. D.I. 40 at 17–18. Plaintiff counters that Florida has no public policy interest in matters arising from the *Deepwater Horizon* spill because "[s]tates do not have differing policy interests in applying uniform federal maritime law." D.I. 42 at 20. But Plaintiff's argument that Florida's policies are not implicated here because federal maritime law involves national, not local, policy interests, is entirely unsupported.

And although "Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts," that "concern is irrelevant since [the plaintiff] is not a Delaware corporation, and the defendant, which is a Delaware corporation, does not want to litigate here." *Realtime Data LLC v. Egnyte, Inc.*, 2018 WL 5724040, at *6 (D. Del. Nov. 1, 2018). Plaintiff also fails to support her assertion that Delaware has a "strong policy interest regarding offshore drilling under federal environmental laws." D.I. 42 at 20 (citing Delaware Senate Bill 207,

13

which was not enacted into law). Plaintiff further asserts that Delaware is "concerned about wrongdoings by oil [and] gas companies including climate change lawsuits resulting from their actions." D.I. 42 at 20–21. But the case that Plaintiff cites to support this assertion involves an alleged disinformation campaign by oil and gas corporations, rather than alleged exposure to harmful toxins. *See* D.I. 42 at 21 (citing *Delaware ex rel. Jennings v. BP Am., Inc.*, 578 F. Supp. 3d 618, 626 (D. Del. 2022)). Because Florida's public policy interests are implicated in this case, whereas Delaware's public policy interests are not, this factor favors transfer.

### 12. Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases

The parties do not dispute that when a case, like this one, is not a diversity action and does not implicate state law, this factor is neutral. *See Puff Corp. v. KandyPens, Inc.*, 2020 WL 6318708, at *6 (D. Del. Oct. 28, 2020); *see also* D.I. 40 at 19; D.I. 42 at 21.

\* \* \* \*

In sum, of the twelve *Jumara* factors, seven weigh in favor of transfer, one weighs against transfer (and is to be given paramount importance), and four are neutral. Considered in their totality, the factors weigh strongly in favor of transfer to the Northern District of Florida.

## III.    CONCLUSION

For the reasons discussed above, I will grant Defendants' motion to transfer the case to the Northern District of Florida.[1]

The Court will issue an Order consistent with this Memorandum Opinion.

---

[1] In her opposition, Plaintiff argues in the alternative that if I decide to transfer this case, I should transfer it to the Eastern District of Louisiana rather than the Northern District of Florida.  D.I. 42 at 1, 6–8, 15, 21; *see also* D.I. 43-1 ¶ 6. Plaintiff, however, did not move to transfer the action, and therefore her request for this form of alternative relief is inappropriate.  *See* D. Del. LR 7.1.2(a) ("Unless otherwise ordered, all requests for relief shall be presented to the Court by motion.").  But, in any event, Plaintiff did not establish in her briefing that a balancing of proper interests weighs in favor of a transfer of the action to the Eastern District of Louisiana.